UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALEXANDER C. GATZIMOS, M.D., )<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL GARRETT, MICHAEL MORRIS, )<br>GRETCHEN YORDY, individually and as )<br>agents of the State of Indiana, KIM )<br>HOBSON, and KATHY SCHOOLER, )<br>    Defendants. ) | 1:04-cv-00740-LJM-JMS |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on defendants', Michael Garrett ("Garrett"), Michael Morris ("Morris"), and Gretchen Yordy ("Yordy") (collectively, the "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) ("Rule 56(c)"). With respect to the Defendants, plaintiff, Alexander C. Gatzimos, M.D. ("Dr. Gatzimos"), alleged the following claims in his Complaint: (1) a 42 U.S.C. § 1983 ("§ 1983") claim for False Arrest against Garrett; (2) a § 1983 claim for Malicious Prosecution against all Defendants; (3) a § 1983 claim for Illegal Search against Garrett; (4) a 42 U.S.C. § 1988 ("§ 1988") claim for Conspiracy against all Defendants; (5) a State law claim for False Arrest against Garrett; and (6) a State law claim for Malicious Prosecution against all Defendants.

In his Response to Defendants' Motion for Summary Judgment, Dr. Gatzimos abandoned his fourth and sixth claims. Pl.'s Resp. at 3 n.2. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** with respect to Dr. Gatzimos' § 1988 claim

for Conspiracy and State law claim for Malicious Prosecution. As to the remainder of Dr. Gatzimos' claims, the Court has considered the parties' arguments and rules as follows.

At the outset, Defendants argue that Dr. Gatzimos failed to comply with this Court's Local Rules and, as a result, his "Statement of Material Facts in Dispute" should be disregarded. S.D. Ind. L.R. 56.1(b). Dr. Gatzimos' twenty-eight page recitation of virtually every fact he feels is advantageous to his case does not meet the requirements of Local Rule 56.1. That rule requires the non-movant to include:

> [A] section labeled "Statement of Material Facts in Dispute" which responds to the movant's asserted material facts by identifying the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment.

S.D. Ind. L.R. 56.1(b).

The consequences for failing to submit an appropriate factual statement in opposition to a motion for summary judgment can be severe, as "the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy . . . ." S.D. Ind. L.R. 56.1(e); *see Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) ("[D]istrict Courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions."). However, the Court has discretion whether to strictly apply this rule against Dr. Gatzimos. *Id.* at 923. In the interest of justice, the Court will take note of the designated evidence that Dr. Gatzimos provides citations to in his discussion of the legal issues in this case and will otherwise strictly construe these rules against Dr. Gatzimos.

## I. BACKGROUND

In 2001, the Defendants, who were at all relevant times detectives with the Indiana State Police, initiated an undercover investigation of Dr. Gatzimos' medical practice in Lebanon, Indiana. Garrett Dep. at 73, 83; Yordy Dep. at 66-67; Morris Dep. at 56. Morris scheduled an appointment with Dr. Gatzimos during which he complained of pain in his lower legs. Morris Dep. at 56, 63, 82. Dr. Gatzimos prescribed aspirin, quinine, and Norco, a Schedule III Controlled Substance. Gatzimos Dep. at 30; Morris Dep. at 145. On Yordy's first visit, she asked Dr. Gatzimos for diet pills so that she could stay awake. Yordy Dep. at 112-13, 123-24. Dr. Gatzimos prescribed Ritalin, a Schedule II Controlled Substance. Gatzimos Dep. at 37; Yordy Dep. at 125.

On April 19, 2002, the Boone County Circuit Court held a probable cause hearing at which Garrett testified. Garrett Dep. Ex. 13. During the hearing, Garrett testified that Yordy and Morris scheduled appointments with Dr. Gatzimos without explaining why they needed appointments. Garrett Dep. Ex. 13 at 9. Garrett testified that Dr. Gatzimos prescribed drugs to Yordy and Morris without a legitimate reason and that Yordy and Morris paid Dr. Gatzimos for their appointments with cash. Garrett Dep. Ex. 13 at 9-10, 14. Garrett also testified that Morris told Dr. Gatzimos that Morris was receiving controlled substances from other sources. *Id.* at 12, 23. Garrett then testified that, according to Morris and Yordy, Dr. Gatzimos pre-signed his prescription pads. *Id.* at 12, 23. In addition, Garrett testified that Dr. Gatzimos asked Morris why he wanted to continue receiving pain medication, to which Morris responded, "I just like it." *Id.* at 11. Dr. Gatzimos then asked Yordy, who was in the examining room, to provide a reason for Morris' prescription and Yordy indicated that Morris did not have any physical problems. *Id.* at 14.

Garrett testified that, after considering this information, Dr. Thomas Hoshour advised him that Dr. Gatzimos' practices were unprofessional. *Id.* at 17-18. Garrett also testified regarding patients of Dr. Gatzimos about whom he was collecting evidence in order to charge them with Obtaining Controlled Substances by Fraud. *Id.* at 20-21.

Based on the foregoing, the Boone County Circuit Court issued a search warrant for Dr. Gatzimos' medical office and an arrest warrant for Dr. Gatzimos. Garrett Dep. Ex. 15; Garrett Dep. Ex. 13 at 28. The search warrant authorized the seizure of Dr. Gatzimos' patient files and any pre-signed prescription pads located in his medical office. *Id.* On April 23, 2002, a search of Dr. Gatzimos' medical office was conducted and law enforcement officers seized his patient records. Garrett Dep. Ex. 12. At 5:50 a.m. that morning, law enforcement officers, including Garrett, arrested Dr. Gatzimos for Dealing Controlled Substances in violation of Ind. Code. § 35-48-4-2. *Id.*; Gatzimos Dep. at 55-56. In December 2002, the criminal charges against Dr. Gatzimos were dismissed. Gatzimos Dep. at 68. The Court adds additional facts as necessary below.

## II. **STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Rule 56(c), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies.  *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).  When the moving party has met the standard of Rule 56, summary judgment is mandatory.  *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the

outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III. <u>DISCUSSION</u>

The Defendants first argue that Dr. Gatzimos has not raised an issue of fact with regard to his claim for Malicious Prosecution.  Specifically, Defendants assert that when viewed in the light most favorable to Dr. Gatzimos, the facts in this case do not support a cognizable Malicious Prosecution claim under § 1983.  Contrary to Dr. Gatzimos' suggestion, the constitution does not ensure a right not to be prosecuted without probable cause.  *Tully v. Barada*, 599 F.3d 591, 594-95 (7th Cir. 2010).  The Court sees no reason to further belabor this issue.  *See Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) ("[I]f a plaintiff can establish a violation of the fourth (or any other) amendment there is nothing but confusion to be gained by calling the legal theory 'malicious prosecution.'").  Defendant's Motion for Summary Judgment is **GRANTED** with respect to Dr. Gatzimos' § 1983 claim for Malicious Prosecution, and the Court proceeds to consider his Fourth Amendment claims.

With respect to Dr. Gatzimos' claims for False Arrest and Illegal Search, Garrett argues that he enjoys qualified immunity from a § 1983 suit for damages because Dr. Gatzimos' arrest and the search of his office were based on probable cause. As both the arrest and the search of Dr. Gatzimos' office were made pursuant to facially valid warrants issued by a judicial officer, Garrett Dep. Ex. 12, Garrett violated Dr. Gatzimos' rights only if a "reasonably well-trained officer[] in [his] position[] should have known that the testimony . . . [he] provided in support of the warrants would have failed to establish probable cause, so that [Garrett] should not have applied for the warrants in the first place." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742 (7th Cir. 2003). To demonstrate this, Dr. Gatzimos must identify evidence showing that Garrett, knowingly or intentionally or with a reckless disregard for the truth, made false statements to the Boone County Circuit Court that were necessary to that court's determination that probable cause existed for the warrants to issue. *Id.* Dr. Gatzimos can also satisfy this burden by showing that Garrett knowingly or intentionally omitted material information from his testimony to the Boone County Circuit Court. *Id.* at 743; *U.S. v. Hoffman*, 519 F.3d 672, 675 (7th Cir. 2008).

Dr. Gatzimos relies heavily on testimony given at his hearing before the Licensing Board of Indiana (the "Board") to support his assertion that Garrett, at the very least, recklessly omitted material information from his testimony to the Boone County Circuit Court. In particular, many of the excerpts from the Board's hearing to which Dr. Gatzimos directs the Court reflect Yordy's and Morris' knowledge about the facts surrounding their investigation of Dr. Gatzimos. The Board conducted its hearing on Dr. Gatzimos' fitness to practice medicine in May of 2002, two weeks after the probable cause hearing before the Boone County Circuit Court. Licensing Bd. Tr., Dkt. No. 111-7. Therefore, information

7

gleaned from the Board's hearing sheds little, if any, light on what Garrett knew at the time he testified before the Boone County Circuit Court, unless Dr. Gatzimos can demonstrate that Garrett knew, at the time of the probable cause hearing, everything that Yordy and Morris testified to at the Board's hearing.

In an attempt to make such a connection, Dr. Gatzimos asserts that, at the Board's hearing, Garrett claimed to have listened to the conversations that took place between Morris, Yordy, and Dr. Gatzimos *via* wireless transmitters, and that he debriefed Morris and Yordy after every visit they had with Dr. Gatzimos. Garrett Dep. Ex. 13 at 25; Licensing Bd. Tr. at 13. However, even assuming that at one time Garrett had detailed knowledge of these conversations, more is required to raise an issue of fact with regard to whether, at the probable cause hearing, Garrett recklessly omitted the details that Yordy and Morris were able to recall at the Board's hearing.

Notwithstanding the foregoing, Dr. Gatzimos also directs the Court to evidence that tends to show Garrett either intentionally omitted information from his testimony to the Boone County Circuit Court, or recklessly disregarded the truth when giving said testimony. For instance, at the probable cause hearing Garrett testified that he was investigating several individuals who, after their first or second appointments with Dr. Gatzimos, abandoned the five or six other doctors from whom they were seeking controlled substances and relied almost exclusively on Dr. Gatzimos to obtain controlled substances. Garrett Dep. Ex. 13 at 20-21. However, based on reports that Garrett prepared in anticipation of the probable cause hearing, it appears that this was a misstatement. Dkt. Nos. 111-31, -32-39. Some of these individuals exhibited a tendency to rely on Dr. Gatzimos' prescriptions more heavily than those of other physicians, but they did not exhibit

8

a pattern of abandoning all other resources after meeting with Dr. Gatzimos. *Id.* In addition, at the probable cause hearing Garrett testified that Yordy did not have to make an appointment in anticipation of her first visit to Dr. Gatzimos' office. Garrett Dep. Ex. 13 at 14-15. However, based on a report that Garrett prepared in anticipation of the probable cause hearing, this also appears to be a misstatement. Dkt. No. 111-16. In his report, Garrett wrote that Yordy scheduled an appointment with Dr. Gatzimos before visiting his office for the first time. *Id.* Similarly, Garrett omitted details regarding Yordy's first visit with Dr. Gatzimos. Specifically, Garrett neglected to tell the Boone County Circuit Court that Dr. Gatzimos cautioned Yordy about the dangers of methamphetamines and listened to some of her medical history before prescribing Ritalin. Compare Garrett Dep. Ex. 13 at 15-17, with Dkt. No. 111-16, -17-19.

An officer is still immune from § 1983 liability when he lies or omits material information unless "no accurate information sufficient to constitute probable cause attended the statements[.]" *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985). Under Indiana law, a person who knowingly or intentionally delivers or finances the delivery of a controlled substance commits dealing in a controlled substance. Ind. Code § 35-48-4-2. Physicians have a qualified defense to prosecution for dealing in a controlled substance, if they can show that their prescriptions are supported by a legitimate medical purpose. *Alarcon v. State*, 573 N.E.2d 477, 480 (Ind. Ct. App. 1991). When Garrett's testimony before the Boone County Circuit Court is purged of any question of falsity, and when all material information that Garrett arguably omitted, either recklessly or intentionally, is inserted, the warrants issued on the basis of four premises. *Cf. Olson*, 771 F.2d at 281 (holding that

9

qualified immunity did not protect an officer, when the information that the officer provided to the judge contained only inaccurate statements.).

First, after cautioning Yordy about the dangers of methamphetamines and listening to some of her medical history, Dr. Gatzimos prescribed Ritalin, a Schedule II Controlled Substance, to Yordy for the purpose of helping Yordy stay awake while driving. Yordy Dep. at 112-13, 123-25; Gatzimos Dep. at 37. Second, Dr. Gatzimos received cash payments from Yordy and Morris for their visits. Garrett Dep. Ex. 13 at 9-10. Based on Garrett's experience in conducting investigations of this nature, upon which the Boone County Circuit Court was entitled to rely, physicians who deal controlled substances "generally prefer cash over any other payment." *Id.*; *United States v. Lamon*, 930 F.2d 1183, 1189 (7th Cir. 1991). Third, Dr. Gatzimos presigned his prescription pads and his assistant wrote the prescriptions for Morris and Yordy. Garrett Dep. Ex. 13 at 23; Dkt. No. 111-17 at 4. Fourth, Morris told Dr. Gatzimos that he was receiving controlled substances from other sources and Dr. Gatzimos still prescribed Hydrocodone, a Schedule II Controlled Substance. Garrett Dep. Ex. 13 at 12.

Because there is no question that probable cause existed to support the warrants that issued for Dr. Gatzimos' arrest and the search of his medical office, Garrett is immune from Dr. Gatzimos' § 1983 claims for False Arrest and Illegal Search. *Beauchamp*, 320 F.3d at 746. Similarly, Dr. Gatzimos has not raised a genuine issue of material fact with regard to whether Garrett committed the tort of False Arrest under Indiana law, because proof of the absence of probable cause is essential to sustain such a claim. *Id.* (citing *Conwell v. Beatty*, 667 N.E.2d 768, 775 (Ind. Ct. App. 1996)).

## IV. **CONCLUSION**

For the foregoing reasons, defendants', Michael Garrett, Michael Morris, and Gretchen Yordy, Motion for Summary Judgment is **GRANTED**.

IT IS SO ORDERED this 29th day of April, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Samuel Mark Adams
MICHEAL K. SUTHERLIN AND ASSOCIATES
msutherlin@gmail.com

Akia Haynes
INDIANA OFFICE OF THE ATTORNEY GENERAL
akia.haynes@atg.in.gov

Betsy M. Isenberg
INDIANA OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Michael K. Sutherlin
MICHAEL K. SUTHERLIN & ASSOCIATES, PC
msutherlin@gmail.com